UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY DEWAYNE SIMMONS,

    Petitioner,

v.                                          Case No.: 8:21-cv-738-CEH-AAS
                                               Crim. Case No. 8:17-cr-537-CEH-AAS

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

    Before the Court is Jeremy Dewayne Simmons's *pro se* amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 25) and addendum (Doc. 28). The United States filed a response in opposition, (Doc. 30), and Simmons filed a reply, (Doc. 38). Simmons seeks to vacate his conviction for one count of possession of a firearm and ammunition by a convicted felon and 188-month sentence. In his motion, Simmons states only that his prior Florida controlled-substance convictions do not support his Armed Career Criminal Act ("ACCA") enhancement (Ground One) and the "[C]onstitution doesn't bar convicted felons" from possessing firearms (Ground Two). (Doc. 25 at 4–5). In his addendum, however,

Simmons clarifies that Ground One is a claim for relief under *Jackson*.[1] (Doc. 28). As for Ground Two, the Court construes it as a claim for relief under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).[2] Simmons is entitled to no relief because his claims are untimely and lack merit.[3]

I.  **Background & Procedural History**

Simmons was indicted on one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Cr-Doc. 1).[4] He pleaded guilty to the offense through a plea agreement. (Cr-Doc. 37).

At his change-of-plea hearing, Simmons confirmed for the magistrate judge that he discussed the charge against him with his attorney. (Cr-Doc. 69 at 8). He then stated that he was freely and voluntarily pleading guilty, and no one threatened or coerced him to do so. (*Id.* at 14). Simmons acknowledged his understanding that he faced a mandatory-minimum term of 15 years' imprisonment under the ACCA as an armed career criminal. (*Id.* at 15–17). The magistrate judge then explained to Simmons the essential elements of the charge. (*Id.* at 22). And Simmons admitted that he possessed

---

[1]  *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022) ("*Jackson I*"), *vacated*, 2022 WL 4959314 (11th Cir. Sept. 8, 2022), *superseded*, 55 F.4th 846 (11th Cir. Dec. 13, 2022) ("*Jackson II*"), *and cert. granted*, 143 S. Ct. 2457 (2023).

[2]  Courts may liberally construe a *pro se* filing, "including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014).

[3]  The motion can be denied without need for an evidentiary hearing, as no hearing is required when the record establishes that a section 2255 claim lacks merit. *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

[4]  References to filings in criminal case number 8:17-cr-537-CEH-AAS are cited throughout this Order as "Cr-Doc. [document number]."

the firearm and ammunition, had been convicted of three controlled substance felonies, and that his right to possess a firearm had not been restored. (*Id.* at 24–26). The magistrate judge found Simmons's guilty plea to be knowing and voluntary, (*id.* at 27), and this Court then adjudicated him guilty, (Doc. 44).

Afterwards, the Probation Office determined that Simmons qualified as an armed career criminal based on three prior Florida controlled-substance convictions. (Cr-Doc. 50 ¶ 31 (Presentence Investigation Report ("PSR") dated May 6, 2019)). Simmons's total offense level (31) and criminal history category (VI) produced an advisory guidelines range of 188 to 235 months' imprisonment. (*Id.* ¶¶ 35, 58, 131). Defense counsel acknowledged in a sentencing memorandum that Simmons met the definition of an armed career criminal but claimed that he was not "dangerous[.]" (Cr-Doc. 52 at 1–2). Defense counsel did not dispute that Simmons's Florida drug convictions were punishable by up to 15 years' imprisonment but described the facts surrounding them as "less than heinous." (*Id.* at 4).

At the May 16, 2019 sentencing hearing, Simmons confirmed for this Court that he reviewed the PSR with his attorney, had no questions about it, and did not wish to object to the United States Sentencing Guidelines' calculation. (Cr-Doc. 67 at 4–5). This Court adopted the Probation Office's Guidelines' calculation without objection. (*Id.* at 7). Simmons was sentenced to 188 months' imprisonment. (Cr-Docs. 53, 56). He did not appeal.

On March 9, 2021, Simmons filed his original section 2255 motion. (Doc. 1). Relying on *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Simmons argued: (1) that his

3

guilty plea was not knowing and voluntary; (2) he was therefore actually innocent; (3) this Court therefore lacked jurisdiction to impose its sentence because the United States did not prove that Simmons knew he was a felon prior to possessing the firearm; and (4) his counsel was ineffective for failing to move to dismiss the indictment. (*Id.* at 4–8). The United States opposed Simmons's motion on grounds it was untimely, three claims were procedurally defaulted, and all the claims were meritless. (*See generally* Doc. 5).

On August 23, 2023, Simmons filed his amended section 2255 motion. (Doc. 25 at 12). The United States urges that the motion should be denied as untimely because it is based on new claims that do not relate back to the original section 2255 motion. The United States also argues that Simmons's claims are procedurally defaulted and lack merit.

## II.    Discussion

### A.    Simmons's claims are untimely.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations for filing a Section 2255 motion to vacate or correct sentence. 28 U.S.C. § 2255(f). Under section 2255(f)(1), the limitations period begins to run from "the date on which the judgment of conviction becomes final." If a defendant does not appeal, his conviction becomes final upon the end of the period for filing a timely notice of appeal, or 14 days after the entry of judgment. Fed. R. App. P. 4(b)(1)(A); *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).

Simmons does not discuss whether his amended section 2255 motion is timely. (*See* Doc. 25 at 11). Nonetheless, his new claims do not relate back to his original motion. Federal Rule of Appellate Procedure 15(c) allows, in some cases, for an amended pleading to "relate back" to the date of the original pleading. Fed. R. App. 15(c). The rule applies when a petitioner files a timely section 2255 motion and then later files an amendment or additional motion that relates back to the original section 2255 motion but would otherwise be untimely. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). A new motion relates back to a previously filed one only if the new claim arises from the same common core of operative facts as the original claim. *Mayle v. Felix*, 545 U.S. 644 (2005). This is not the case here.

In his original section 2255 motion, Simmons asserted: (1) that *Rehaif* rendered his guilty plea unknowing and involuntary; (2) he was therefore actually innocent; (3) this Court lacked jurisdiction to impose its sentence because the United States did not prove that Simmons knew he was a felon prior to possessing the firearm; (3) and his counsel was ineffective for failing to move to dismiss the indictment based on *Rehaif*. (*See generally* Doc. 1). But, in the instant motion, Simmons argues that the Constitution does not bar felons from possessing firearms and that *Jackson* renders his ACCA enhancement invalid. (*See* Doc. 25). The United States correctly asserts that the new motion does not relate back to the original section 2255 motion because it asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *See Mayle*, 545 U.S. at 650.

5

Even if Simmons's motion related back, section 2255(f) requires a claim-by-claim assessment to determine timeliness. *See Beeman v. United v. States*, 871 F.3d 1215, 1219 (11th Cir. 2017). "If a particular claim does not depend on the new [Supreme Court] decision, that claim is untimely and must be dismissed." *Id.* If Simmons believes his motion is timely under section 2255(f)(3) because *Bruen* is retroactive, he is mistaken. In *Bruen*, the Supreme Court merely affirmed the right under the Second Amendment for a law-abiding citizen to publicly carry a firearm without showing a specialized need. 142 S. Ct. at 2122. Here, 18 U.S.C. § 922(g)(1) does not infringe on that right, as Simmons's criminal conduct falls outside the scope of *Bruen*. Section 2255(f)(3) is therefore inapplicable. *See, e.g.*, *Parks v. United States*, No. CV 123-080, 2023 WL 4406026, at *2–3 (S.D. Ga. July 7, 2023) (finding that *Bruen* "does not satisfy the criteria in 28 U.S.C. § 2255(f)(3) to restart the clock for filing a section 2255 motion."); *Salley v. United States*, No. 8:19-CR-317-MSS-AEP, 2023 WL 3568618, at *2 (M.D. Fla. May 18, 2023) ("*Bruen* established a right for '*law-abiding* citizens' in the context of firearms licensing, *Bruen* did not establish a newly recognized right that protects [a convicted felon].") (emphasis added).

Further, even if this Court could determine that *Bruen* retroactively applies to Simmons, the one-year time frame guaranteed to him under section 2255(f)(3) ended on June 23, 2023—the one-year anniversary of *Bruen*. Simmons did not raise his claims until he filed his amended section 2255 motion on August 23, 2023—two months after

6

the filing deadline ended.[5] (Doc. 25 at 12). *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001) (pleadings filed by an incarcerated petitioner are considered filed on the date they were placed into the prison's official mail system).

Finally, Simmons's claim based on *Jackson* is also untimely under section 2255(f)(3) because *Jackson* is not a Supreme Court decision, or one that recognizes a newly retroactive right. Thus, Simmons can only proceed with his section 2255 motion if he can prove that his claims are timely under section 2255(f)(1). The time afforded to Simmons under section 2255(f)(1), however, ended on May 30, 2020, and Simmons raised his *Jackson* claim on August 23, 2023—over three years after expiration of the deadline. (Doc. 25 at 12). For these reasons, Simmons's claims are untimely, and his section 2255 motion is dismissed.

### B.  Simmons's claims lack merit.

Alternatively, even if Simmons timely asserted his claims, he is not entitled to relief because they lack merit.[6]

---

[5]  Simmons moved to extend his time to file an amended section 2255 motion because he was awaiting prison transfers and lacked access to legal materials, (*see* docs. 16, 18, 20), but the Eleventh Circuit has held that those circumstances do not equitably toll a petitioner's filing deadline. *See Dodd v. United States*, 365 F.3d 1273, 1282–83 (11th Cir. 2004) (equitable tolling is inapplicable for periods of lockdown or for routine prison transfers.); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (lack of access to a law library and legal documents do not constitute extraordinary circumstances).

[6]  Although the United States argues that Simmons procedurally defaulted his claims by not raising them on direct appeal, the claims fail on their merits in any event. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 124, 211 L. Ed. 2d 40 (2021) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

### 1. Ground One

In Ground One, Simmons asserts that in light of *Jackson* his prior Florida cocaine convictions no longer support his ACCA enhancement. (Doc. 25 at 4; Doc. 28). In *Jackson*, the Eleventh Circuit considered which version of the drug schedule the definition of a serious drug offense incorporates: the one in effect when the defendant committed his firearm offense, or the one in effect when the defendant was convicted of his prior state drug offense. *Jackson II*, 55 F.4th at 849. Jackson, who had committed his firearm offense in 2017, had prior cocaine-related convictions under Fla. Stat. § 893.13(1) from 1998 and 2004. *Id.* at 851. When he committed those predicate Florida drug offenses, the federal and Florida drug schedules had included ioflupane, a cocaine derivative, as a controlled substance. *Id.* But in 2015, ioflupane was removed from the federal drug schedule due to its potential use in diagnosing Parkinson's disease. *Id.* Jackson argues that change rendered his prior Florida cocaine-related convictions non-qualifying under the ACCA, because they included potential conduct—an offense involving ioflupane—that under the revised Controlled Substances Act ("CSA") is no longer criminal. *Id.*

The panel in *Jackson I* first agreed with Jackson, *see* 36 F.4th at 1303–1306, but on rehearing, the court held that the ACCA's definition of an earlier conviction for a "serious drug offense" is "backward looking" and incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense. *Jackson II*, 55 F.4th at 855. And because a federal drug offense is defined

to incorporate the version of the CSA (and therefore the federal controlled-substances schedules) in effect when the defendant's federal drug conviction occurred, the ACCA's use of the CSA to define prior federal and state "serious drug offense[s]" also incorporates the federal drug schedules in effect at the time of the prior conviction. *Id.* at 858–59. The "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense." *Jackson II*, 55 F.4th at 849. As a result, the only Florida cocaine-related drug convictions that no longer qualify as serious drug offenses under the ACCA are those for which a defendant was convicted *after September 11, 2015*, when the federal drug schedule was changed to eliminate ioflupane, and *before July 1, 2017*, when the Florida drug schedule was also amended. *See* Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54,715, 54715 (Sept. 11, 2015) (emphasis added); 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505) (emphasis added); *Jackson II*, 55 F.4th at 857–59; *see also Jackson I*, 36 F.4th at 1301–03 (providing history of changes about ioflupane).

Simmons, unlike the defendant in Jackson, committed his Florida cocaine offenses in 2000 and 2005—well before September 11, 2015, when ioflupane was removed from the federal drug schedule. (*See* Doc. 50 ¶ 31). *Jackson II*, 55 F.4th at 857–59; *Jackson I*, 36 F.4th at 1301–03). Accordingly, based on the ultimate holding in *Jackson II*, Simmons fails to prove that he is actually innocent of his ACCA designation. Ground One is, therefore, denied as meritless.

9

### 2. Ground Two

In Ground Two, Simmons erroneously argues that the Constitution does not bar felons from possessing firearms. (Doc. 25 at 5). Simmons relies on *Bruen*, in which the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. And it struck down a New York license-to-carry law that "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156. But, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008)).

*Bruen* rejected the "'two-step' framework" under which appellate courts had previously "combine[d] history with means-end scrutiny" in analyzing Second Amendment challenges after *Heller* and *McDonald v. City of Chicago,* 561 U.S. 742 (2010), and reaffirmed those two decisions while also clarifying the "standard for applying the Second Amendment." 142 S. Ct. at 2125, 2129. First, the Court held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2129–30. Second, the Court held that when the conduct is protected, the government must "justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation." *Id.* at 2130.

10

*Bruen* recognized that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791." *Id.* at 2132. Thus, when considering "modern regulations that were unimaginable at the founding," the historical inquiry will "often involve reasoning by analogy." *Id.* In "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation," courts must determine "whether the two regulations are relevantly similar," which will involve considering "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33 (quotations omitted). The Court emphasized this "analogical reasoning . . . is neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 2133. "On the one hand, courts should not uphold every modern law that remotely resembles an historical analogue[.]" *Id.* (internal quotation marks omitted). "On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* (emphasis in original). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

Both *Heller* and *Bruen* defined the right to bear arms as belonging to "law-abiding, responsible" citizens, *Heller*, 554 U.S. at 635; *Bruen*, 142 S. Ct. at 2156, or "ordinary, law-abiding citizens," *Bruen*, 142 S. Ct. at 2122, 2134. For that reason, *Bruen* did not question the constitutionality of "shall-issue" licensing regimes that "often require applicants to undergo a background check or pass a firearms safety

11

course" to ensure that "those bearing arms" are "'law-abiding, responsible citizens.'" *Id.* at 2138 n.9; see *id.* at 2162.

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1). Before *Bruen*, the Eleventh Circuit held that section 922(g)(1) does not violate the Second Amendment. *United States v. Rozier*, 598 F.3d 768, 772 (11th Cir. 2010). Those individuals convicted of a felony, the Eleventh Circuit explained, were a class of people that may be "'disqualified from the exercise of Second Amendment rights.'" *Id.* at 770–71 (quoting *Heller*, 554 U.S. at 626, 635). *Bruen* did not overturn *Rozier;* it conveyed that a state may not enforce a law that effectively prevents its *law-abiding* residents from carrying a gun for a lawful purpose. *See* 142 S. Ct. at 2159 (emphasis added).

Here, Simmons admitted under oath at his plea hearing that he possessed the firearm and ammunition, he had been convicted of the listed felonies before he possessed those items, and that his right to possess a firearm had not been restored. (Cr-Doc. 69 at 24–26). Individuals convicted under section 922(g)(1) are not law-abiding, responsible citizens who fall within the Second Amendment's protection under *Heller* and *Bruen*. *See, e.g.*, *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023) (upholding the constitutionality of section 922(g)(1) post-*Bruen*); *United States v. Dunn*, 76 F.4th 1062 (8th Cir. 2023) (same); *United States v. Smith*, No. 22-10795, 2023 WL 5814936 (5th Cir. Sept. 8, 2023) (unpublished) (same); *United States v. Morgan*, No.

8:23-cr-72-TPB-CPT, 2023 WL 4562850 (M.D. Fla. July 17, 2023) (Barber, J.) (stating that *Rozier* remains binding and section 922(g)(1) remains constitutional); *United States v. Kirby*, No. 3:22-cr-26-TJC-LLL, 2023 WL 1781685 (M.D. Fla. Feb. 6, 2023) (Corrigan, J.) (same). As a result, Simmons's claim is meritless and Ground Two is denied.

### III. Conclusion

Simmons's amended motion under 28 U.S.C. § 2255 (Doc. 25) is **DISMISSED** as time barred. Alternatively, the motion is **DENIED** on its merits. The Clerk is directed to enter judgment against Simmons, to close this case, and to enter a copy of this order in the criminal action. The Clerk is also directed to terminate the motions at docket entries 65 and 73 in the criminal action.

Simmons is not entitled to a certificate of appealability. To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linehan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Simmons fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 28th day of February, 2024.

Charlene Edwards Honeywell
United States District Judge

***Copies to:***
*Pro Se* Petitioner
Counsel of Record